E-filing

COPY

1  Damien Brower, SBN: 171119
   Office of the City Attorney
2  CITY OF BRENTWOOD
   708 Third Street
3  Brentwood, CA 94513
   Telephone:  (925) 516-5440
4  Facsimile:   (925) 516-5441
   dbrower@ci.brentwood.ca.us
5
   Rick W. Jarvis, SBN: 154479
6  Benjamin P. Fay, SBN: 178856
   JARVIS, FAY & DOPORTO, LLP
7  475 - 14th Street, Suite 260
   Oakland, CA 94612
8  Telephone:  (510) 238-1400
   Facsimile:   (510) 238-1404
9  rjarvis@jarvisfay.com
   bfay@jarvisfay.com
10
   Attorneys for Respondent and Defendant
11 CITY OF BRENTWOOD

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15

16 D. BAILEY NEFF, MINNESOTA          )   CASE NO:
   RENTALS, INC.,                     )
17                                     )   C07-02907
          Petitioners and Plaintiffs, )
18                                     )
   v.                                 )
19                                     )   NOTICE OF REMOVAL OF ACTION;
   CITY OF BRENTWOOD, and DOES I-XX,  )   UNDER 28 U.S.C. SECTION 1441(b)
20                                     )   [FEDERAL QUESTION]
          Respondents and Defendants. )
21 _____)

22

23        TO THE CLERK OF THE ABOVE-ENTITLED COURT:

24        PLEASE TAKE NOTICE THAT respondent and defendant City of Brentwood hereby

25 removes to this Court the state court action described below.

26        1.    On May 7, 2007, an action was commenced in the Superior Court of the State of

27 California in and for the County of Contra Costa, entitled *D. Bailey Neff, Minnesota Rentals, Inc.*

28 *v. City of Brentwood,* as case number C 07-00964. The Verified Petition for Writ of Mandate;

                                        1

ORIGINAL
FILED
JUN - 5 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ADR

MEJ

1 | Complaint for Inverse Condemnation is attached hereto as Exhibit "A."

2 |     2.    The date upon which defendant City of Brentwood received a copy of said complaint

3 | was May 7, 2007, when defendant was served with a copy of the summons and complaint which

4 | was filed in the County of Contra Costa. A copy of the summons is attached hereto as Exhibit

5 | "B".

6 |     3.    This action is a civil action of which this Court has original jurisdiction under 28

7 | U.S.C. section 1331, and is one which may be removed to this Court by defendant pursuant to the

8 | provisions of 28 U.S.C. section 1441(b) in that the Fourth Cause of Action arises under the Fifth

9 | and Fourteenth Amendments of the United States Constitution, asserting a taking of the plaintiffs'

10 | property without just compensation and a violation of the plaintiffs' right to equal protection of the

11 | laws. The remaining causes of action are not by themselves removable, in that they do not allege

12 | any claims which arise under federal law, but because the Fourth Cause of Action is separate and

13 | independent from the remaining causes of action this entire case is thus removable under 28

14 | U.S.C. section 1441(c).

15 | DATED: June 5, 2007                 JARVIS, FAY & DOPORTO, LLP

16

17 |                                By: _____

18 |                                    Benjamin P. Fay

19 |                              Attorneys for Respondent and Defendant
    CITY OF BRENTWOOD

20

21 | J:\Clients\137 [City of Brentwood]\006 [Bailey Neff]\Plead\Notice of Removal of Action (Federal Court).wpd

22

23

24

25

26

27

28

Notice of Removal of Action under 28 U.S.C. Section 1441(b)

# EXHIBIT A

1  DANIEL A. MULLER /CA SB # 169935
   Morgan Miller Blair, a Law Corporation
2  1331 N. California Blvd., Suite 200
   Walnut Creek, CA  94596-4544
3  Telephone:     (925) 937-3600
   Facsimile:     (925) 943-1106
4  dmuller@mmblaw.com

5  Attorneys for Petitioners and Plaintiffs
   D. BAILEY NEFF, and MINNESOTA RENTALS, INC.

6

7

8

9             SUPERIOR COURT OF THE STATE OF CALIFORNIA

              IN AND FOR THE COUNTY OF CONTRA COSTA
10

11 D. BAILEY NEFF, MINNESOTA RENTALS,     Case No: **C  07-00964** ^H
   INC.,
12                                        **VERIFIED PETITION FOR WRIT OF**
                                          **MANDATE; COMPLAINT FOR**
13          Petitioners/Plaintiffs,       **INVERSE CONDEMNATION**

14      v.                                [Permit Streamlining Act (Govt Code § 65920
                                          *et seq.*), Subdivision Map Act (Govt Code
15 CITY OF BRENTWOOD, and DOES I-XX,      § 65410 *et seq.*), Planning and Zoning Law
                                          (Govt Code § 65000 *et seq.*), Brentwood
16          Respondents/Defendants.       Municipal Code, Code of Civil Procedure
                                          §§ 526, 527, 1085, 1087, 1094.5, California
17                                        and United States Constitutions]

18

19      By this Verified Petition and Complaint, petitioners and plaintiffs D. BAILEY NEFF and

20 MINNESOTA RENTALS, INC. (collectively, "Petitioners") allege as follows:

21                    I.      INTRODUCTION

22

23      1.      Through this action, Petitioners challenge numerous project-processing delays,

24 and certain decisions and conditions made or imposed by the City of Brentwood's officials and

25 decision-making bodies (collectively, "City" or "Respondent").  The challenged conduct relates

26 to a subdivision application submitted by Petitioners on or about August 8, 2003 and to other

27 submittals thereafter.  The application and submittals were intended to further Petitioners' effort

28

   Morgan
   Miller
   Blair,
   A
   Law
   Corporation

                                                                                          1
   VERIFIED PETITION FOR WRIT OF MANDATE; COMPLAINT FOR INVERSE CONDEMNATION

1  to subdivide their property at 1060 Minnesota Avenue, in the City of Brentwood (the "Project").

2  The conduct being challenged includes unreasonable and illegal delays by City staff, and also

3  improper decisions made, or conditions imposed, by City's Planning Commission and City

4  Council.  The primary Planning Commission actions in question occurred in October 2006, and

5  March 2007, and both were appealed by Petitioners to City's City Council.  The City Council

6  considered and decided the appeals in October 2006, and April 2007, respectively.  The

7  aforementioned City actions culminated in an approval of the Project by the City Council on

8  April 7, 2007, subject to numerous conditions, to which Petitioners strenuously objected.

9         2.       By this action, Petitioners seek a writ of mandate setting aside the challenged City

10  Council approvals and decisions in October 2006 and April 2007 on the grounds that City, by

11  and through its staff and decision-making bodies (1) abused its discretion by taking the

12  aforementioned actions without proceeding in the manner required by the Permit Streamlining

13  Act (Govt Code section 65920 et seq.) ("Streamlining Act"), the Subdivision Map Act (Govt

14  Code section 65410 et seq.), the State Planning and Zoning Law (Govt Code section 65000 et

15  seq.), and City's Municipal Code; (2) acted arbitrarily and capriciously in seeking to impose

16  requirements on Petitioners that were not supported by substantial evidence nor by then-current

17  City policy, and violated equal protection principles due to their dissimilarity from requirements

18  imposed on others who were similarly situated; and (3) imposed Project conditions that in other

19  ways do not comply with relevant Municipal Code, statutory, and state and federal constitutional

20  requirements.  Such writ of mandate would remand the matter to City with directions to comply

21  with the requirements of the aforementioned statutory, constitutional, and Municipal Code

22  provisions, in connection with any proposed re-approval of the Project.  Alternatively,

23  Petitioners seek a writ of mandate invalidating and setting aside only the offending conditions of

24  approval, leaving the approvals otherwise intact, or imposing reasonable substitute conditions

25  consistent with statutory and constitutional requirements.  This action also seeks monetary

26  damages, in inverse condemnation, for the excessive costs Petitioners have borne due to City's

27  unreasonable delays and conditions.

28

MORGAN
MILLER
BLAIR,
A
LAW
CORPORATION

2

**VERIFIED PETITION FOR WRIT OF MANDATE; COMPLAINT FOR INVERSE CONDEMNATION**

1    5.    The true names and capacities of Respondents DOES I-XX, inclusive, are

2  unknown to Petitioners who therefore sue said respondents by such fictitious names pursuant to

3  Code of Civil Procedure section 474.  Petitioners will seek leave of Court to amend this petition

4  and complaint when the true names and capacities of said Doe respondents have been

5  ascertained.

6                    III.    JURISDICTION AND VENUE

7    6.    The Contra Costa County Superior Court has jurisdiction of the matters alleged

8  herein pursuant to Code of Civil Procedure sections 526, 527, 1085, 1087 and 1094.5.

9    7.    Venue is proper pursuant to Code of Civil Procedure sections 393 (b) and 395(a).

10    8.    This Petition and Complaint is timely filed within all applicable statutes of

11  limitations, including Government Code sections 65009 and 66499.37, and Code of Civil

12  Procedure section 343.

13                    IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

14    9.    Petitioners have performed all conditions precedent to the filing of this Petition

15  and Complaint.  As the owners/developers of the Project, Petitioners participated in all phases of

16  the administrative process, and repeatedly raised the concerns forming the basis of this Petition

17  and Complaint.  Thus, Petitioners fully exhausted their administrative remedies.

18    10.    City has taken final agency action with respect to the conduct and conditions of

19  approval challenged herein.  In its handling of Petitioners' application and submittals, in making

20  determinations, and in imposing conditions, such as those at issue in this action, City has a

21  mandatory duty to comply with applicable state and federal laws, including, but not limited to,

22  the California and United States constitutions, the Streamlining Act, the Subdivision Map Act,

23  the State Planning and Zoning Law, and Code of Civil Procedure sections 1085 and 1094.5, and

24  to comply with the Municipal Code.  Petitioners timely appealed the Planning Commission's

25  determinations made in October 2006 to the City Council, and timely appealed the Planning

26  Commission's determinations in February 2007 to the City Council.  City's actions by the City

27  Council in October 2006 and April 2007 are final, and no further administrative remedy exists to

MORGAN
MILLER
BLAIR,
A
LAW
CORPORATION

28

4

VERIFIED PETITION FOR WRIT OF MANDATE; COMPLAINT FOR INVERSE CONDEMNATION

## II.    PARTIES

3.    Petitioner D. BAILEY NEFF ("Neff") owns real property approximately 3.7-acres in size, located at 1060 Minnesota Avenue, in the City of Brentwood, Contra Costa County (the "Property"), which is the site of the Project.  Neff is the principal/owner of petitioner MINNESOTA RENTALS, INC., which is the designated "developer" of the Project.  As the Project owners/developers, Petitioners have a direct interest in ensuring that City complies with State statutes, the California and United States constitutions, and City's Municipal Code in processing the application for, and approving the Project.  Petitioners made numerous oral and written objections to City's handling of the Project application after it was submitted in August 2003, and before City's decisions in October 2006, and its improper conditions of approval ultimately imposed in April 2007.

4.    Respondent CITY OF BRENTWOOD ("City") is a municipal corporation governed by the general laws of the State of California.  Included within City are City's staff, who are responsible for reviewing and processing development applications.  Also included is City's Planning Commission, which is an advisory agency, with some decision-making authority, subject to appeal to the City Council, and is responsible for reviewing and approving development applications, and for making determinations on issues relating to such applications.  Also included is City's City Council, which is City's legislative body, ultimately responsible for finally reviewing and approving development applications, hearing appeals from Planning Commission decisions, and making other final determinations on behalf of City relating to land use approvals.  City's staff are required to, inter alia, timely review and process project applications, and City's Planning Commission and City Council are required to grant, deny or condition project applications.  All of these land use functions of City's staff, Planning Commission, and City Council must comply with the aforementioned requirements, including the requirements of the California and United States constitutions, the Streamlining Act, the Subdivision Map Act, the State Planning and Zoning Law, and the Municipal Code, as well as the requirements of Code of Civil Procedure sections 1085 and 1094.5.

MORGAN
MILLER
BLAIR,
A
LAW
CORPORATION

3

VERIFIED PETITION FOR WRIT OF MANDATE; COMPLAINT FOR INVERSE CONDEMNATION

1   meaningfully allow Petitioners to cure City's unlawful conduct. Thus, Petitioners possess no

2   effective remedy to challenge the conduct at issue in this action other than by means of this

3   lawsuit.

### V. FACTUAL BACKGROUND

5       11.     On or about August 8, 2003, Petitioners submitted to City their Project

6   application, proposing to subdivide the Property.

7       12.     In a letter dated September 19, 2003 - i.e., 42 days after the Project application

8   was submitted - City's planning staff sent Petitioners a letter, claiming various items were

9   needed to render the Project application complete.

10      13.     Under protest, given the untimeliness of City staff's response and the invalidity of

11  some of the items requested, Petitioners began complying with City's requests in the September

12  19th letter, and made further submittals to City staff.

13      14.     Petitioners submitted a revised map soon thereafter.  On January 8, 2004 - again,

14  beyond 30-days after this submittal - City staff sent Petitioners a hand-written one-page fax,

15  stating that the revised map needed to be changed so that no lots front onto Minnesota Avenue,

16  and that a number of other items from the September 19, 2003, letter needed to be submitted.  No

17  specific items were identified beyond this reference.

18      15.     Many months later, after encountering further unreasonable delays, in late June

19  2005, Petitioners submitted to City staff a revised tentative map, showing 12 proposed lots plus a

20  "buffer" parcel along the southern boundary of the Project, and a Residential Growth

21  Management Plan ("RGMP") score sheet.  By way of a letter in mid-July 2005, Petitioners

22  requested a response, asking City staff "would you please advise me as to the status of the items

23  submitted and what your schedule is for processing and approval of the application." On July

24  21, 2005, another staff person at City provided Petitioners a letter stating that the application had

25  been re-assigned to her and it was incomplete.  Specifically, it needed to go through City's

26  RGMP process, for which a fee of $2,411 was needed; the southern lots would be subject to

27  City's General Plan density transition policy, requiring minimum lot sizes of 20,000 square feet;

28

MORGAN
MILLER
BLAIR,
A
LAW
CORPORATION

5

**VERIFIED PETITION FOR WRIT OF MANDATE; COMPLAINT FOR INVERSE CONDEMNATION**

1  and the Project could not keep the parcel's historic, existing access to Minnesota Avenue.

2      16.  By a letter of July 25, 2005, Petitioners provided payment of the RGMP fee and a

3  copy of the previously-submitted RGMP score sheet.  Petitioners' letter further stated:

4      "I received your letter of July 21, 2005, and look forward to working with
5  you on this project. … [E]nclosed is a copy of a letter dated June 30, 2005,
    addressed to [staff] with the 2004 RGMP Score Sheet for [the Project]. [¶]  We
6      believe we have complied with the zoning lot size as designated for SPA L and
    the RGMP criteria as stated in your letter.  We prepared the RGMP scoring and
7      look forward to receiving your written review of the submittal based on
    development as shown. [¶]  Please inform Pulte that their plans will need to be
8      revised to provide access from Minnesota Avenue to [the Project]. [¶] Peggy
    Campbell visited with you on Friday July 22, 2005, and I understand you outlined
9      a proposed layout.  We look forward to receiving a dimensioned drawing of the
    proposed layout.  [¶] I know you have other projects assigned to you and would
10      like to establish a schedule for review and approval.  With your experience, would
    you please outline a tentative schedule that we can work towards [sic].  One item
11      would be the written review of the RGMP submitted on June 30, 2005, another
    item would be the dimensioned drawing suggested to Peggy Campbell on July 22,
12      2005, another would be a general outline of other meetings and submittals that
    may be required."

13      17.  On the same date as the aforementioned letter (July 25, 2005) City staff sent a

14  response, stating in part as follows:

15      "In order to process your request, you must submit an application for
    Residential Growth Management allocation.  Please review Page 30 of the
16      enclosed RGMP which details explicitly what you must do in order to complete
    an application.  A scoresheet prepared by you is not sufficient for us to process
17      your application.  You will need to clearly explain how your project meets or
    complies with the allocation evaluation criteria as stated in Item 6 on Page 30 and
18      as designated in Pages 8 through 15, in addition to the other listed submittal items.
    At this time we do not have an RGMP application from you; therefore, I am
19      returning your check and will accept it once you have submitted the required
    application and submittal items. [¶]  On this note, our Engineering Department
20      has determined that your access will be provided through the Pulte subdivision,
    not off Minnesota Avenue due to the closeness in proximity to existing and
21      planned subdivision entrances.  Therefore, as stated in my letter to you dated July
    21, you will need to revise your plans showing your access through their
22      subdivision as shown on Pulte's map, a copy of which was given to Ms.
    Campbell. [¶]  As I explained to Ms. Campbell, your subdivision map as
23      submitted is not in compliance with the City's General Plan due to our density
    transition policy, nor is it in conformance with the adopted land use plan for [SPA
24      L].  In order to do this, you will need to place 20,000 square foot lots along your
    southern property line… Until you comply with these requirements, we will be
25      unable to process any RGMP application as it would not be in conformance with
    our General Plan.…"

26

    18.  On August 5, 2005, Petitioners again wrote City staff (again enclosing the RGMP

27  check for $2,411), stating they understood, based on the meeting with staff on July 29, 2005, in

28

MORGAN
MILLER
BLAIR,
A
LAW
CORPORATION

6

VERIFIED PETITION FOR WRIT OF MANDATE; COMPLAINT FOR INVERSE CONDEMNATION

1   the case of several other project applicants (Pringle/Apricot Way, Taylor/Grant Street, The

2   Estates at Prewett Ranch, and Parkside Villas), the City had deemed RGMP score sheets like

3   Petitioners' as being fully adequate for RGMP application purposes.  Petitioners explained that

4   "I have patterned my previous submittal after ... Pringle, Taylor and Prewett Ranch and I believe

5   you are requesting a different format patterned after Baca Properties dated November 12, 2004,

6   that you gave me on July 29, 2005 even though Baca Properties does not apparently have an

7   application on file."  Despite Petitioners' concerns and protests about being required to comply

8   with inapplicable standards or criteria, Petitioners enclosed (under protest) an RGMP submittal

9   patterned after the Baca Properties submittal, stating "I hope we can proceed with this

10  submittal."  Petitioners requested (again) that they be allowed to retain their long-standing access

11  to the Project via Minnesota Avenue, and noted that (for this 12-lot proposal) Petitioners

12  intended to comply with the City's density transition policy by the proposed linear "buffer" or

13  "transition" parcel containing olive orchards along the southern and eastern boundaries.  Finally,

14  Petitioners noted "[we] hope that we could meet to discuss any concerns you have rather than

15  writing letters back and forth and delaying the approval of the project... [and] look forward to

16  receiving an estimated schedule for review and approval of this project as previously requested."

17      19.    On August 23, 2005, Petitioners sent a letter to the Mayor and Members of the

18  City Council, objecting to City staff's position that Petitioners could not retain historical access

19  via Minnesota Avenue.  Petitioners also noted as follows:

20          "[our] RGMP application has been delayed unreasonably.  There are 3
            submittals, after which, I patterned my RGMP application, which have
21          application dates subsequent to [my] application.... [The applications are listed.]
            ... I believe I have been requested to meet a higher standard than my
22          contemporary applicants which has acted as a delay in processing [my RGMP
            application].  I have been requested, and complied, to submit a RGMP submittal
23          to a higher standard which has delayed the development advancement of [the
            Project].  I believe without this delay the development of [the Project] could be
24          presented this evening."  Petitioners also noted that "on at least three occasions,
            the Brentwood Planning Department staff members have suggested [my property]
25          be developed concurrently with the adjacent property to the north,
            Pulte/Biedermann.  There is over 500 lineal feet of common property lines
26          between [the Property] and the Pulte/Biedermann property, which will involve
            grade elevations.  To have either party, Pulte/Biedermann or [me] develop
27          without the other, ignoring common issues and perhaps causing undue hardships
            that could otherwise be avoided is not in the best interest of either party.  I request

MORGAN
MILLER
BLAIR,
A
LAW
CORPORATION

28

7

**VERIFIED PETITION FOR WRIT OF MANDATE; COMPLAINT FOR INVERSE CONDEMNATION**

1  [my] development be accelerated or the Pulte/Biedermann development be held in
2  abeyance until both can be presented concurrently. I have twice requested, by
   correspondence, to meet with the Brentwood Planning Department since learning
3  that access to [the Project] was safe and have not received a reply concerning my
   requests."

4       20.    On August 30, 2005, staff sent Petitioners a letter stating they "determined that

5  we will not be able to process your application further as the map you submitted is not in

6  conformance with the zoning and general plan designations for the property.  As I mentioned to

7  you [previously] you will need to place 20,000 square foot lots along your southern property

8  line… The 20,000 square foot olive orchard you are proposing does not meet the intent of the

9  density transition policy; i.e., placing minimum 20,000 square foot residential lots abutting

10 existing Ranchette Estate lots. [¶]  In addition, as also mentioned in [staff's] letter of July 25,

11 you will need to submit a plan which shows your entrance … through the Pulte subdivision to

12 your north."

13      21.    On September 2, 2005, Petitioners sent City staff another letter, enclosing (under

14 protest) copies of the proposed tentative subdivision map and the written narrative RGMP style

15 staff had requested.  Petitioners noted they "would like to restate… that you advise Pulte to

16 revise their plan so that [the Project] can be [accessed] from Minnesota Avenue.  We feel that if

17 Pulte builds their project as submitted it would potentially cause additional traffic on [the

18 Project] causing a safety hazard.  At the City Council Meeting of August 23, 2005, it was stated

19 that the map accompanying the Pulte RGMP was subject to change and could be changed.  [¶]  I

20 would hope that we could meet to discuss any concerns you have rather than writing letters back

21 and forth and delaying the approval of the project. [¶]  I look forward to receiving an estimated

22 schedule for review and approval of this project as previously requested."

23      22.    On September 8, 2005, Petitioners sent City staff a copy of City's letter of

24 September 19, 2003, asking staff to provide a similar letter, to describe what Petitioners had to

25 submit to ensure the Project application was moving forward.  Petitioners noted that "In previous

26 correspondence, I have requested a schedule of events.  At this time I request this list of items to

27 be completed as well as a schedule to meet specific deadlines as I have requested in the past."

MORGAN
MILLER
BLAIR,
A
LAW
CORPORATION
28

8

**VERIFIED PETITION FOR WRIT OF MANDATE; COMPLAINT FOR INVERSE CONDEMNATION**

23.    On September 13, 2005, Petitioners again wrote to the Mayor and Councilmembers, objecting to then-proposed RGMP amendments, and also expressing great concern over how their application was being (mis)handled.  Petitioners asked that the proposed RGMP amendments be re-noticed, to receive adequate public review.  As to the Project application process, Petitioners observed:

> "Minnesota Rentals, Inc. has submitted the Universal Application on July 29, 2003.  [¶]  Minnesota Rentals, Inc. RGMP fee of $2,411 was submitted July 25, 2005.  [¶]  I have requested meetings on several occasions.  The first meeting was requested between April 19 and April 27, 2005, and a meeting was held Friday, May 6, 2005.  At this meeting several items were discussed [including] access to Minnesota Avenue and the RGMP but it [was] cut short.  I requested we review the RGMP Scoring process but was told one of the planners, who was not initially scheduled to attend the meeting, did not have time to review the RGMP with me and the other planner.  [¶] … [Petitioners enclose and list their letters to the Planning Department, in which they requested a schedule and/or meeting.] … On September 2, 2005, [staff] agreed to a meeting on the morning of September 9, 2005.  This meeting was cancelled because another member of the planning department was in meetings all day.  The meeting was rescheduled for Thursday, September 15, 2005 at 3:00 p.m.  This meeting has been cancelled due to the same member of the planning department having a change in schedule and not being able to attend.  [¶] Hopefully a meeting that has now been scheduled for the third time will take place.  The meeting is scheduled for September 15, 2005, at 10:00 a.m. and is the first meeting granted by the Planning Department after the initial submittals and requests for a meeting, as requested in the letters above spanning a period of two and one half months."

24.    Petitioners' letter also (1) asks that City staff be required to meet with someone requesting a meeting within 7 calendar days of the request, (2) objects to the impending changes to the rules with which Petitioners must comply, based on reasonableness and fairness, in light of the delays Petitioners have experienced in getting staff's time and attention on his longstanding application, and (3) observes that City staff appear to have been implementing parts of the proposed amendments (as to Petitioners' application) despite the amendments' as-yet un-approved status and inherently prospective application.

25.    On September 15, 2005, Petitioners submitted yet another RGMP scoring package, this time for the 8-lot proposal.

26.    On September 20, 2005, Petitioners submitted to the Mayor and Councilmembers copies of 162 signatures in favor of granting access to the Project via Minnesota Avenue.

MORGAN
MILLER
BLAIR,
A
LAW
CORPORATION

9

**VERIFIED PETITION FOR WRIT OF MANDATE; COMPLAINT FOR INVERSE CONDEMNATION**

27.    On September 22, 2005, Petitioners submitted to City staff the addressed, stamped envelopes for giving notice to property owners within 300 feet of the Project. Petitioners also reference the 162 signatures in favor of access to the Project via Minnesota Avenue, and ask for the signing individuals to receive notice of hearings on the Project.

28.    On September 30, 2005, Petitioners sent City staff copies of the tentative subdivision map, and noted that they would provide the narrative RGMP as staff had requested on Monday October 3, 2005, as per their discussion (and under protest). Petitioners also restated their request that Pulte be advised to revise their plan, so that access to the Project can be made via Minnesota Avenue. On October 3, 2005, Petitioners submitted the RGMP narrative information.

29.    A year later, in September 2006, after encountering further problems caused by City staff in moving the Project application forward, Petitioners filed an "appeal" with City, requesting the Planning Commission to review the determinations of City's staff relating to the completeness of Petitioners' application. The appeal stated, inter alia, "The [City] has not complied with Government Code 65943(a) and (b) by responding in writing within the 30 day period. [¶] We request [City to] approve the application of [Petitioners for the Project] under California Government Code 65943(b)…'the application together with the submitted materials shall be deemed complete for purposes of this chapter.'"

30.    The Planning Commission hearing on Petitioners' appeal occurred on October 3, 2006. The staff report for the Planning Commission hearing admits the Streamlining Act requires that once a formal application has been received, City must respond to the applicant as to the completeness of their application within 30 days. The staff report states that staff believes "Since the filing fees were not submitted with the universal application for this project as required in accordance with the City's adopted subdivision ordinance, it is the City's position that no formal application exists at this time." Petitioners attended the October 3rd hearing and presented oral argument and written submittals. The Planning Commission rejected Petitioners' appeal.

MORGAN
MILLER
BLAIR,
A
LAW
CORPORATION

10

VERIFIED PETITION FOR WRIT OF MANDATE; COMPLAINT FOR INVERSE CONDEMNATION

1    31.    Petitioners timely appealed the Planning Commission's determination to the City

2  Council, which heard the appeal at its meeting of October 24, 2006.  The staff report for the City

3  Council's October 24th hearing stated, as to the Planning Commission's decision on October

4  3rd, "It was the position of the Commission that since the required fees had not been paid for

5  processing the application, no formal application existed."  The staff report further acknowledges

6  that staff first responded to Petitioners' application 42 days after receipt of the application form.

7  It explains that, despite the fees having been unpaid, "[in] a good faith effort, anticipating that

8  the fees would be forthcoming, staff has been continually working with [Petitioners] over the

9  past three years to assist [them] in getting the required information submitted in order to

10  complete the application.  Staff has attempted to be prompt in their responses to submittal items

11  and inform [Petitioners] of the items still required."  The report further noted that "In order to

12  alleviate this situation from occurring in the future, [City] has initiated a policy that no

13  application forms are to be accepted without the required processing fees."  After the

14  presentation of the matter by City staff, and Petitioners' submittals and oral presentation, the City

15  Council denied Petitioners' appeal.

16    32.    Thereafter, Petitioners paid the requested filing fees and began negotiating with

17  City staff (all under protest) to bring the Project application to hearing, for approval by the

18  Planning Commission and City Council.

19    33.    The Planning Commission considered the Project at its meeting of March 6, 2007.

20  In their submittals and oral presentations at the hearing, Petitioners recited various grounds why

21  many of the proposed conditions sought by staff were inappropriate and illegal, including that

22  the Planning Commission exercise its discretion in a fair manner, to correct what Petitioners

23  viewed as inappropriate restrictions and design standards, which they believed (a) other

24  applicants have not been required to follow, or (b) should not be applied to this Project for timing

25  reasons - i.e., because they would not have applied if it were not for City's unreasonable

26  processing delays.  The Planning Commission approved the Project and imposed staff's

27  proposed conditions despite Petitioners' objections.

28

MORGAN
MILLER
BLAIR,
A
LAW
CORPORATION

11

VERIFIED PETITION FOR WRIT OF MANDATE; COMPLAINT FOR INVERSE CONDEMNATION

34.    Petitioners timely appealed the Planning Commission's approval of the Project, with the objectionable conditions, to the City Council, which heard Petitioners' appeal on April 7, 2007.  Again, Petitioners submitted objections in writing and in oral presentations at the City Council hearing. The City Council denied Petitioners' appeal, and approved the Project with substantially the same conditions that had been imposed by the Planning Commission.

### FIRST CAUSE OF ACTION

### (Violations of Streamlining Act)

35.    Petitioners hereby incorporate by reference the allegations contained in Paragraphs 1 through 34, inclusive.

36.    The Streamlining Act requires public agencies to provide clear guidance to project applicants regarding what must be submitted, and provide timely responses to project applicant's submittals.  The Streamlining Act also requires project applications to be deemed "complete" if the agency fails to timely respond.

37.    City staff admittedly failed to timely respond to many of Petitioners' submittals, beginning with the original application submitted in August 2003.

38.    City proceeded in excess of their jurisdiction and abused their discretion in rejecting (in October 2006) Petitioners' appeals of staff's determinations regarding the completeness of Petitioners' application.

39.    City's argument that "there was no formal application, because the filing fees had not been paid" is a post hoc rationalization, squarely contradicted by its then-current policy of accepting applications without the fee being paid simultaneously, and by its conduct of processing (albeit untimely) Petitioners' application and submittals.

40.    City's actions in denying Petitioners' appeals in October 2006 thus exceed City's jurisdiction and constitute a prejudicial abuse of discretion.  Accordingly, City's determinations as to Petitioners' appeal on the "application completeness" question are contrary to law and invalid and should be set aside.

WHEREFORE, Petitioners pray for judgment as hereinafter set forth.

MORGAN
MILLER
BLAIR,
A
LAW
CORPORATION

12

**VERIFIED PETITION FOR WRIT OF MANDATE; COMPLAINT FOR INVERSE CONDEMNATION**

## SECOND CAUSE OF ACTION

### (Violations of Subdivision Map Act, Planning and Zoning Law, Municipal Code)

41.     Petitioners hereby incorporate by reference the allegations contained in Paragraphs 1 through 40, inclusive.

42.     Various statutory and related provisions, including but not limited to City's Municipal Code and the Subdivision Map Act, provide that cities' fees for reviewing map applications are not "due" until the application is filed with the secretary or clerk of the advisory agency. Thus Petitioners' application fees were not "due" at the time of filing the application with City staff.

43.     Also, statutory provisions prohibit cities from imposing requirements that are merely proposed and not yet formally adopted.

44.     City's actions, including requiring Petitioners' fees to be paid upon submittal of the map application to City's staff, and seeking to impose RGMP criteria and Affordable Housing Program criteria that were not yet formally adopted at the time Petitioners were seeking to comply with such requirements, were an abuse of discretion, and contrary to law.

WHEREFORE, Petitioners pray for judgment as hereinafter set forth.

## THIRD CAUSE OF ACTION

### (Violations of CCP §§ 1094.5, 1085)

45.     Petitioners hereby incorporate by reference the allegations contained in Paragraphs 1 through 44, inclusive.

46.     Petitioners allege that no substantial evidence has been provided to support the challenged City conditions of approval. For example, as to City's condition prohibiting left-turn access into and out of the Project, City admits it has no formal or informal policy governing the issue and has provided no substantial evidence supporting the unfair condition. Similarly, there is no substantial evidence supporting City's condition requiring submission by Petitioners of a Phase II soil contamination analysis.

WHEREFORE, Petitioners pray for judgment as hereinafter set forth.

MORGAN
MILLER
BLAIR,
A
LAW
CORPORATION

13

VERIFIED PETITION FOR WRIT OF MANDATE; COMPLAINT FOR INVERSE CONDEMNATION

1          FOURTH CAUSE OF ACTION

2          (Violation of California and United States Constitutions)

3          47.    Petitioners hereby incorporate by reference the allegations contained in

4    Paragraphs 1 through 46, inclusive.

5          48.    With regard to City's conduct in unreasonably delaying Petitioners' application

6    and submittals in violation of the Streamlining Act and other relevant statutory and similar

7    provisions, and its imposition of conditions of approval seeking exactions beyond what could

8    reasonably have been demanded, for which City has provided no sufficient legal "nexus" for

9    requiring such exactions or fees, Petitioners have suffered significant delay and monetary

10   damages which constitute an unlawful "taking" of Petitioners' property rights without just

11   compensation.

12         49.    Similarly, City's imposition of conditions on Petitioners that seek to impose

13   standards not imposed on other similarly-situated applicants fails to comport with constitutional

14   Equal Protection requirements (e.g., City's conduct regarding Petitioners' RGMP and Affordable

15   Housing Program compliance, and City's condition prohibiting left-turn access), and such

16   impositions of unfair conditions has likewise caused Petitioner delay and monetary damages.

17         WHEREFORE, Petitioners pray for judgment as hereinafter set forth.

18                         **PRAYER FOR RELIEF**

19         WHEREFORE, Petitioners pray for the following relief:

20
21         1.    For an order staying the conditions of the Project's approval and preliminary and

     permanent injunctions restraining City from taking any action to impose the challenged Project
22
     conditions pending a decision on the merits;
23
24         2.    For this Court's judgment and peremptory writ of mandate directing:

25               a.    City to vacate and set aside the challenged conditions of Project approval;

26               b.    City to impose, in any subsequent action taken to approve the Project,
27   conditions that otherwise comply with the Streamlining Act and all other laws, rules and

28   regulations;

                                                                                          14

MORGAN
MILLER
BLAIR,
A
LAW
CORPORATION

**VERIFIED PETITION FOR WRIT OF MANDATE; COMPLAINT FOR INVERSE CONDEMNATION**

1        3.     For damages under the California and United States constitutions' "takings" and

2  "equal protection" doctrines.

3        4.     For attorneys' fees under Code of Civil Procedure sections 1036 and 1021.5;

4        5.     For costs of suit herein; and

5        6.     For such other and further relief as the Court deems just and proper.

6

7  DATED: May 7, 2007               MORGAN MILLER BLAIR, A LAW CORPORATION

8

9                        By:

10                            DANIEL A. MULLER
                                 Attorneys for Petitioners

11                            D. BAILEY NEFF, and MINNESOTA
                             RENTALS, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MORGAN
MILLER
BLAIR,
A
LAW
CORPORATION
27

28                                                  15

# VERIFICATION

I, D. BAILEY NEFF, declare:

I have read the foregoing VERIFIED PETITION FOR WRIT OF MANDATE and know the contents thereof. The same is true of my own knowledge, except for those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 7, 2007, in Walnut Creek California.

_____
D. BAILEY NEFF

MORGAN
MILLER
BLAIR,
A
LAW
CORPORATION

**VERIFICATION FOR WRIT OF MANDATE**
MMB:9506-001:525061.1

# EXHIBIT B

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

FILED

2007 MAY -7 P 3: 19

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

CITY OF BRENTWOOD, AND DOES I-XX

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

D. BAILEY NEFF, MINNESOTA RENTALS

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER *(Número del Caso):* C 07 - 00964 |
|---|---|

Superior Court of Conta Costa County
Main Courthouse Building
725 Court Street, Martinez

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
(925) 937-3600        (925) 943-1106

Daniel A. Muller
Morgan Miller Blair
1331 N. California Boulevard, Suite 200
Walnut Creek, CA 94596

S. HARBRECHT

| DATE: *(Fecha)* MAY - 7 2007 | Clerk, by *(Secretario)* | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* City of Brentwood
   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☒ other *(specify):* A Municipal Corporation
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465