Damien Brower, SBN: 171119
City Attorney
CITY OF BRENTWOOD
708 Third Street
Brentwood, CA 94513
Telephone:   (925) 516-5440
Facsimile:    (925) 516-5441
dbrower@ci.brentwood.ca.us

Rick W. Jarvis, SBN: 154479
Benjamin P. Fay, SBN: 178856
JARVIS, FAY & DOPORTO, LLP
475 - 14th Street, Suite 260
Oakland, CA 94612
Telephone:   (510) 238-1400
Facsimile:    (510) 238-1404
rjarvis@jarvisfay.com
bfay@jarvisfay.com

Attorneys for Respondent and Defendant
CITY OF BRENTWOOD

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D. BAILEY NEFF, MINNESOTA RENTALS, INC., <br><br>        Petitioners and Plaintiffs, <br><br> v. <br><br> CITY OF BRENTWOOD, and DOES I-XX, <br><br>        Respondents and Defendants. <br> _____ | CASE NO:    C 07-02907 MEJ <br><br> **ANSWER TO VERIFIED PETITION FOR WRIT OF MANDATE; COMPLAINT FOR INVERSE CONDEMNATION** <br><br> Action Filed: May 7, 2007 <br> Trial Date: None Set |

Respondent and Defendant CITY OF BRENTWOOD ("Respondent" or "the City") hereby

answers the "Verified Petition for Writ of Mandate; Complaint for Inverse Condemnation" filed

by Petitioners and Plaintiffs D. BAILEY NEFF ("Neff") and MINNESOTA RENTALS, INC

("Minnesota Rentals") (hereinafter collectively "Petitioners") as follows:

1.    Answering paragraph 1, Respondent admits that since 2003 Petitioners have

submitted applications to subdivide property at 1060 Minnesota Avenue in the City of Brentwood.

On October 3, 2006 the Planning Commission denied Petitioners' appeal regarding the completeness of one of their applications, and on October 24, 2006 the City Council denied Petitioners' appeal of the Planning Commission's denial.  On March 6, 2007, the Planning Commission approved Petitioners' application for an eight-lot tentative subdivision map with various conditions.  On April 10, 2007, the City Council denied Petitioners' appeal of the conditions of that approval.  Petitioners have asserted objections to some of the conditions of this approval.  Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 1.

2.     Answering paragraph 2, Respondent denies the allegations set forth in paragraph 2.

3.     Answering paragraph 3, Respondent is without sufficient knowledge or information to form a belief as to the truth of the allegations regarding Petitioners' allegations of Neff's ownership of property in the City of Brentwood and Neff's relationship to Minnesota Rentals and on that basis denies these allegations.  Respondent admits that Petitioners have submitted numerous oral and written complaints to the City.  Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 3.

4.     Answering paragraph 4, Respondent admits that the City of Brentwood is a municipal corporation organized under the general laws of the State of California.  Pursuant to state law, the City is governed by an elected mayor and city council.  The City has a planning commission that exercises the powers and duties granted to it by the Brentwood Municipal Code and the laws of the State of California.   The City Council has hired a City Manager and other staff to handle the administration of the City, including land use applications, subject to the Brentwood Municipal Code, the laws of the State of California, and the Brentwood General Plan.  Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 4.

5.     Answering paragraph 5, Respondent denies the allegations set forth in paragraph 5.

6.     Answering paragraph 6, Respondent asserts that this court has jurisdiction over the claims alleged in the Petition under 28 U.S.C. section 1331 and 28 U.S.C. section 1441.  Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 6.

7.     Answering paragraph 7, Respondent admits that this court is the proper venue for

Answer                                                                                          Case No. C 07-02907 MEJ

this action.

8.     Answering paragraph 8, Respondent denies the allegations set forth in paragraph 8.

9.     Answering paragraph 9, Respondent admits that Petitioners made numerous oral and written complaints to the City regarding Petitioners' applications to develop the property at 1060 Minnesota Avenue in the City of Brentwood.  Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 9.

10.     Answering paragraph 10, Respondent admits that the City has taken final action with respect to the Brentwood City Council's October 24, 2006 denial of Petitioners' appeal of the Planning Commission's October 3, 2006 determination that one of Petitioners' applications was not complete and with respect to the Brentwood City Council's April 10, 2007 approval of Petitioners' application for an eight-lot tentative subdivision map with various conditions. Respondent also admits that it is subject to the applicable state and federal laws as well as its own laws.  Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 10.

11.     Answering paragraph 11, Respondent admits that on August 8, 2003 Petitioners submitted to Respondent a "Universal Application" for a permit, but Petitioners did not indicate what kind of permit they were seeking and they did not pay any fee.  Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 11.

12.     Answering paragraph 12, Respondent admits that on September 19, 2003 City staff sent Neff a letter listing many of the items that were missing from Petitioners' purported August 8, 2003 application.  Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 12.

13.     Answering paragraph 13, Respondent admits that Petitioners made further submittals, but by the end of 2003 they had still not submitted all of the further materials that were required in order to make the purported August 8, 2003 application complete.  Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 13.

14.     Answering paragraph 14, Respondent admits that Petitioners submitted a revised map on December 26, 2003 and that on January 8, 2004 City staff sent Neff a fax stating:

Answer                                                                                              Case No. C 07-02907 MEJ

> "The map needs to be revised such that no lots front on to Minnesota Avenue.
> There are also a number of items that still need to be submitted in order to complete
> the application, per my original letter dated 9/19/03.  Please let me know if you
> have any questions."

Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 14.

15.     Answering paragraph 15, Respondent admits that with a cover letter dated on June 30, 2005 Neff submitted to the City a revised tentative map with 12 proposed lots and a Residential Growth Management Program ("RGMP") score sheet.  In a letter dated July 15, 2005 and addressed to City staff, Neff wrote "[w]ould you please advise me as to the status of the items submitted and what your schedule is for processing and approval of the application."  In a letter dated July 25, 2005 and addressed to Neff, a City staff member wrote that the project had been reassigned to her and that the application was incomplete.  The July 25, 2005 letter stated that the application had to go through the RGMP process, a fee of $2,411 had to be paid, the lots along the southern edge of the property had to be a minimum of 20,000 square feet, the lots along Minnesota Avenue had to be a minimum of 10,000 square feet, and access for the project could not be from Minnesota Avenue and would have to be through the neighboring Pulte development.  Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 15.

16.     Answering paragraph 16, Respondent admits that with a letter dated July 25, 2005, Neff submitted a check in the amount of $2,411 and a copy of the RGMP score sheet previously submitted with the June 30, 2005 letter.  The July 25, 2005 letter stated:

> "I received your letter of July 21, 2005, and look forward to working with you on
> this project.  Enclosed is a check for $2,411.00 as requested in your letter.  Also
> enclosed is a copy of a letter dated June 30, 2005, addressed to Hedi [sic] Kline
> with the 2004 RGMP Score Sheet for 1060 Minnesota Avenue attached.
>
> "We believe we have complied with the zoning lot size as designated in SPA L and
> the RGMP criteria as stated in your letter.  We prepared the RGMP scoring and
> look forward to receiving your written review of the submittal based on
> development as shown.
>
> "Please inform Pulte that their plans will need to be revised to provide access from
> Minnesota Avenue to St. James Court (1060 Minnesota Avenue).
>
> "Peggy Campbell visited with you on Friday, July 22, 2005, and I understand you
> outlined a proposed layout.  We look forward to receiving a dimensioned drawing

Answer                                                                    Case No. C 07-02907 MEJ

of the proposed layout.

"I know you have other projects assigned to you and would like to establish a schedule for review and approval. With your experience, would you please outline a tentative schedule that we can work towards. One item would be the written review of the RGMP submitted on June 30, 2005, another item would be the dimensioned drawing suggested to Peggy Campbell on July 22, 2005, another would be a general outline of other meetings and submittals that may be required.

"I believe it would be beneficial to try and meet sometime in the near future to discuss this project."

Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 16.

17.    Answering paragraph 17, Respondent admits that a letter dated July 25, 2005 from City staff to Neff stated:

"I have received your letter dated July 25 along with your check and respond as follows:

"In order to process your request, you must submit an application for a Residential Growth Management allocation. Please review Page 30 of the enclosed RGMP which details explicitly what you must do in order to complete an application. A scoresheet prepared by you is not sufficient for us to process your application. You will need to clearly explain how your project meets or complies with the allocation evaluation criteria as stated in Item 6 on Page 30 and as designated in Pages 8 through 15, in addition to the other listed submittal items. At this time we do not have an RGMP application from you; therefore, I am returning your check and will accept it once you have submitted the required application and submittal items.

"On this note, our Engineering Department has determined that your access will be provided through the Pulte subdivision, not off Minnesota Avenue due to the closeness in proximity to existing and planned subdivision entrances. Therefore, as stated in my letter to you dated July 21, you will need to revise your plans showing your access through their subdivision as shown on Pulte's map, a copy of which was given to Ms. Campbell.

"As I also explained to Ms. Campbell, your subdivision map as submitted is not in compliance with the City's General Plan due to our density transition policy, nor is it in conformance with the adopted land use plan for Special Planning Area "L", of which you are a part. In order to do this, you will need to place 20,000 square foot lots along your southern property line, and 10,000 square foot lots on the remaining acreage. Until you comply with these requirements, we will be unable to process any RGMP application as it would not be in conformance with our General Plan. I have enclosed a copy of the SPA "L" Land Use Plan which clearly shows the minimum 10,000 square foot lot size.

"When I discussed your application with Ms. Campbell, I did a sketch of how your lotting pattern could possibly be arranged in order to adhere to the 10,000 and 20,000 square foot lot requirements. The City does not prepare dimensioned drawings for individual applicants. I would suggest you discuss this with your engineer and see what type of lotting pattern they can come up with in order to

Answer                                                                              Case No. C 07-02907 MEJ

address your lot size and access constraints.

"I hope the above clarifies what steps you need to take in order to continue processing your application.  If you have further questions, please feel free to contact me."

Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 17.

18.    Answering paragraph 18, Respondent admits that in a letter dated August 5, 2005 from Neff to City Staff, Neff wrote:

"In a meeting with you at the Planning Department counter on July 29, 2005 I understood the Pringle, Taylor and The Estate at Prewett Ranch were allowed to submit a score sheet of the RGMP because of their application dates, even though their dates are subsequent to my application date.

"I have patterned my previous submittal after the Pringle, Taylor and Prewett Ranch and I believe you are requesting a different format patterned after Baca Properties dated November 12, 2004, that you gave me on July 29, 2005 even though Baca Properties does not apparently have an application on file.

"Enclosed is the written RGMP patterned after the Baca Properties submittal.  I hope we can proceed with this submittal.

"I would like to restate, from my previous correspondence, that you advise Pulte to revise their plan so that St. James Court can be entered and exited from Minnesota Avenue.  We feel that if Pulte builds their project as submitted it would potentially cause additional traffic on St. James Court causing a safety hazard.

"I would like to bring to your attention the 20,083.18 square foot olive orchard adjacent to the Southern and Eastern property line for both the density transition plan and item 6, Agricultural Enterprise of the RGMP.  All of the 12 lots exceed the 10,000 square foot minimum.

"I would hope we could meet to discuss any concerns you have rather than writing letters back and forth and delaying the approval of the project.

"I look forward to receiving an estimated schedule for review and approval of this project as previously requested."

The letter also stated that a check was included as well as a "written narrative RGMP."  Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 18.

19.    Answering paragraph 19, Respondent admits that in a letter dated August 23, 2005 from Petitioners to the City Council of Brentwood, Petitioners asserted that the decision by City Staff that access to Petitioners' project would be through the neighboring Pulte development and not from Minnesota Avenue violated Petitioners' "constitutional rights."  Petitioners also objected

6

to the Pulte RGMP and asked that it be denied.  In this letter, Petitioners wrote, in part:

> "My RGMP application has been delayed unreasonably.  There are 3 submittals, after which, I patterned my RGMP application, which have application dates subsequent to the 1060 Minnesota application.  These are as follows:

| " Project | Application Date |
| --- | --- |
| "1.   Neff/Minnesota Rentals. Inc.<br>Minnesota Avenue | 07/29/2003 |
| "2.   Pringle<br>Apricot Way | 08/25/2003 |
| "3.   Taylor<br>Grant Street | 12/16/2003 |
| "4.   The Estates at<br>Prewett Ranch | 03/01/2005<br>07/23/2004 (RGMP) |

> "I believe I have been requested to meet a higher standard than my contemporary applicants which has acted as a delay in processing the 1060 Minnesota Avenue RGMP.

> "I have been requested, and complied, to submit a RGMP submittal of a higher standard which has delayed the development advancement of 1060 Minnesota Avenue.  I believe without this delay the development of 1060 Minnesota Avenue could be presented this evening.

> "As stated above, on three occasions, the Brentwood Planning Department staff members have suggested 1060 Minnesota Avenue be developed concurrently with the adjacent property to the north, Pulte/Biedermann.  There is over 500 lineal feet of common property lines between 1060 Minnesota Avenue and the Pulte/ Biedermann property, which will involve grade elevations.  To have either party, Pulte/Beidermann [sic] or 1060 Minnesota Avenue develop without the other, ignoring common issues and perhaps causing undue hardships that could otherwise be avoided is not in the best interest of either party.  I request the 1060 Minnesota Avenue development be accelerated or the Pulte Biedermann development be held in abeyance until both can be presented concurrently.  I have twice requested, by correspondence, to meet with the Brentwood Planning Department since learning that access to Minnesota Avenue was safe and have not received a reply concerning my requests.  I believe is [sic] would be advantages [sic] to try and develop the property concurrently as the Brentwood Planning Department Staff has admonished on three occasions."

Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 19.

20.     Answering paragraph 20, Respondent admits that on August 30, 2005, City Staff sent Petitioners a letter which stated:

> "I have reviewed your RGMP submittal and have determined that we will not be

Answer                                                                                          Case No. C 07-02907 MEJ

able to process your application further as the map you submitted is not in conformance with the zoning and general plan designations for the property.  As I mentioned to you in my last letter dated July 25, 2005, you will need to place 20,000 square foot lots along your southern property line, and 10,000 square foot lots on the remaining acreage.  The 20,000 square foot olive orchard you are proposing does not meet the intent of the density transition policy; i.e., placing minimum 20,000 square foot residential lots abutting existing Ranchette Estate lots.

"In addition, as also mentioned in my letter of July 25, you will need to submit a plan which shows your entrance to the subdivision through the Pulte subdivision to your north.

"In the meantime, if you have any questions, please feel free to contact me."

Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 20.

21.    Answering paragraph 21, Respondent admits that in a letter dated September 2, 2005 from Petitioners to City Staff, Petitioners wrote:

"Enclosed are ten (10) full size and one (1) 8  x 11 copy of the proposed tentative subdivision map, and the written narrative RGMP style you requested for the attached.

"I would like to restate, as I have from my previous correspondence, that you advise Pulte to revise their plan so that St. James Court can be entered and exited from Minnesota Avenue.  We feel that if Pulte builds their project as submitted it would potentially cause additional traffic on St. James Court causing a safety hazard.  At the City Council Meeting of August 23, 2005, it was stated that the map accompanying the Pulte RGMP was subject to change and could be changed.

"I would hope we could meet to discuss any concerns you have rather than writing letters back and forth and delaying the approval of the project.

"I look forward to receiving an estimated schedule for review and approval of this project as previously requested."

Enclosed with the September 2, 2005 letter was a Residential Management Growth Program analysis, dated September 2, 2005.  Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 21.

22.    Answering paragraph 22, Respondent admits that Petitioners sent City staff a letter dated September 8, 2005.  A copy of the letter sent from City staff to Neff on September 19, 2003 was enclosed with the September 8, 2005 letter.  The September 8, 2005 letter stated:

"Attached is a letter from Erik Nolthenius dated September 19, 2003.  As you can see, this letter addresses the items that need to be submitted in order to proceed.

Answer                                                                                                    Case No. C 07-02907 MEJ

"I am requesting this same type of list from you for the subject project.

"In previous correspondence, I have requested a schedule of events.  At this time I request this list of items to be completed as well as a schedule to meet specific deadlines as I have requested in the past.

"I understand that Dianne, who is Howard Sword's secretary, is trying to schedule a meeting for us next week.  I would appreciate receiving this list of requirements and the schedule dates two (2) days prior to our meeting.

"If you have any questions please feel free to contact me.  As in the past, I have requested to meet with you to try and have better communication rather than written communication and I hope that we will be able to accomplish this."

Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 22.

23.    Answering paragraph 23, Respondent admits that Petitioners sent the Mayor and Councilmembers of the City of Brentwood a letter dated September 13, 2005, which stated in part:

"I am opposed to the approval of the Resolution approving significant changes with major revisions to the City's Residential Growth Management Program (RGMP), in its current form, agenda item 22.

". . . .

"I request the revisions of the RGMP be noticed to the public with a description of the 15 items to be changed.

"Minnesota Rentals, Inc. has submitted the Universal Application on July 29, 2003.

"Minnesota Rentals, Inc. RGMP fee of $2,411 was submitted July 25, 2005.

"I have requested meetings on several occasions.  The first meeting was requested between April 19 and April 27, 2005, and a meeting was held Friday, May 6, 2005.  At this meeting several items were discussed.  Two specific items discussed were access to Minnesota Avenue and the RGMP but it cut short.  I requested we review the RGMP Scoring process but was told one of the planners, who was not initially scheduled to attend the meeting, did not have time to review the RGMP with me and the other planner.

"The following are letters to the planning department, which are attached, with highlighted portions requesting a schedule and/or meeting.

"July 15, 2005 –     Drawings and the RGMP Score Sheet were submitted but could not be located for 2 weeks, Request for Schedule.

"July 25, 2005 –     Request for a tentative schedule and to meet.

"August 5, 2005 –     2nd page, request to meet and estimated schedule

"September 2, 2005 – Request meeting and schedule

Answer                                                                                    Case No. C 07-02907 MEJ

1   "September 8, 2005 – Request to contact me and meet with me

2   "On September 2, 2005, the planner of the 1060 Minnesota Avenue project agreed
    to a meeting on the morning of September 9, 2005. This meeting was cancelled
3   because another member of the planning department was in meetings all day. The
    meeting was rescheduled for Thursday, September 15, 2005 at 3:00 p.m. This
4   meeting has been cancelled due to the same member of the planning department
    having a change in schedule and not being able to attend.

5
    "Hopefully a meeting that has now been scheduled for the third time will take
6   place. The meeting is scheduled for September 15, 2005, at 10:00 a.m. and is the
    first meeting granted by the Planning Department after the initial submittals and
7   requests for a meeting, as requested in the letters above spanning a period of two
    and one half months.

8
    ". . . .
9
    "I request the following:
10
            "1.     This agenda item be postponed to a future date until an accurate
11                  public notice is posted and mailed.

12          "2.     Re-advertise with a proper description of the major revisions and
                   significant changes to the RGMP as stated on Pages 1, 2, and 3 of
13                 the Staff Report to the City Council."

14  Except as expressly admitted, Respondent denies each and every allegation contained in paragraph

15  23.

16          24.     Answering paragraph 24, in addition to the statements in paragraph 23 above,

17  Respondent admits that Petitioners' letter dated September 13, 2005 also stated, in part:

18  "I request the following:

19  ". . . .

20          "5.     The Planning Department be directed to operate under the existing
                   October 12, 2004, RGMP until a new revised RGMP is approved by
21                 the City Council. I believe Planning Department personnel have
                   implemented parts of the revised RGMP as illustrated in Planning
22                 Department letters of July 21, 2005 and August 30, 2005.

23          "6.     The planning department, as a matter of Standard Practice, grant a
                   request for meeting within 7 calendar days of date of request."
24

25  Except as expressly admitted, Respondent denies each and every allegation contained in paragraph

26  24.

27          25.     Answering paragraph 25, Respondent admits that on September 15, 2005 Petitioners

28  submitted to the City a letter that provided analysis of the Residential Growth Management

Answer                                                                          Case No. C 07-02907 MEJ

Program with respect to the Petioners' application for an eight-lot subdivision of the property at 1060 Minnesota Avenue in the City of Brentwood.  Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 25.

26.    Answering paragraph 26, Respondent admits that Petitioners sent the Mayor of the City of Brentwood and the members of the City Council of the City of Brentwood a letter dated September 20, 2005 that included 108 copies of the proposed subdivision map for Petitioners' eight-lot subdivision application dated June 2005.  On each copy of the map was a signature and the statement: "I am in favor of access from Minnesota Avenue to the future development of the Neff property for a gated community."  Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 26.

27.    Answering paragraph 27, Respondent admits that Petitioners sent City Staff a letter dated September 22, 2005 which stated:

> "Enclosed are the stamped, self-addressed envelopes for the properties within 300 feet of 1060 Minnesota Avenue.  Also attached is the email from North American Title showing the properties within 300 feet.

> "I am sure that these will be sent out to the designated individuals when the subject matter is to be heard.

> "A letter was delivered to the City Clerk for you, as well as others, concerning signatures in support of access to Minnesota Avenue from the subject property.  As noted in the letter, we would like to have all the individuals who have signed in favor of access to Minnesota Avenue notified of any meetings where access to the subject property or to Pulte's property will be discussed.  In the August 23, 2005, City Council meeting, one of the Randy Way residents requested that all residents of Randy Way be notified of any meetings concerning the Pulte-Biedermann Property.  Please include all of these requests for notice for any City meetings related to the access of the subject property to and from Minnesota Avenue."

Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 27.

28.    Answering paragraph 28, Respondent admits that Petitioners sent City Staff a letter dated September 30, 2005 which stated:

> "Enclosed are ten (10) full size and one (1) 8 ½ x 11 copy of the proposed tentative subdivision map.  The narrative RGMP you requested will be submitted Monday, October 3, 2005, as we discussed.

> "I would like to restate, as I have from my previous correspondence, that you

advise Pulte to revise their plan so that St. James Court can be entered and exited from Minnesota Avenue. We feel that if Pulte builds their project as submitted it would potentially cause additional traffic on St. James Court causing a safety hazard. At the City Council Meeting of August 23, 2005, it was stated that the map accompanying the Pulte RGMP was subject to change and could be changed."

On October 3, 2005, Petitioners submitted to the City an RGMP analysis. Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 28.

29.    Answering paragraph 29, Respondent admits that on September 29, 2006 Petitioners filed a document titled "APPEAL OF Minnesota Rentals, Inc." This document stated:

"This an appeal of the Planning Department of the Community Development Department of the City of Brentwood under the State of California Government Code Section 65940-65945.7.

"The City of Brentwood Planning Department has not complied with Government Code 65943(a) and (b) by responding in writing within the 30 day period."

". . . .

"We request the City of Brentwood Planning Commission approve the application of Minnesota Rentals, inc. for TSM 8446 under California Government Code 65943(b) '...the application together with the submitted materials shall be deemed complete for purposes of this chapter.'"

Except as expressly admitted, Respondent denies each and every allegation contained in paragraph 29.

30.    Answering paragraph 30, Respondent admits that on October 3, 2006 the Planning Commission held a hearing on the appeal described in paragraph 29 above. The staff report for the October 3, 2006 hearing on this appeal stated, in part:

"The Permit Streamlining Act (Government Code Section 65943) requires that once a formal application has been received that the City must respond to the applicant as to the completeness of their application within 30 days.

". . . .

"Since the filing fees were not submitted with the universal application for this project as required in accordance with the City's adopted subdivision ordinance, it is the City's position that no formal application exists at this time."

Neff appeared at the October 3, 2006 hearing on this appeal and made an oral presentation. The Planning Commission voted to deny this appeal. Following the Planning Commission's decision to deny this appeal, Neff asked the Planning Commission to continue the hearing on his separate four-lot subdivision application for the same property which had been agendized to be heard at the

12

1   same meeting.  The Planning Commission granted his request.  Except as expressly admitted,

2   Respondent denies each and every allegation contained in paragraph 30.

3        31.    Answering paragraph 31, Respondent admits that Petitioners appealed the Planning

4   Commission's denial of the appeal described in paragraph 29 above to the Brentwood City

5   Council.  The City Council held a hearing on this appeal on October 24, 2006.  The staff report

6   stated, in part:

7        "It was the position of the Commission that since the required fees had not been
         paid for processing of the application, no formal application existed.
8
         ". . . .
9
         "Mr. Neff originally submitted a universal application form for TSM 8446 on
10       August 8, 2003.  Even though fees were not submitted with the application at that
         time, staff worked in good faith with the applicant and did respond to Mr. Neff on
11       September 19, 2003, 42 days after receipt of the application form, advising him of
         the necessary items in order to complete his application.
12
         "Since fees were not paid at the time of application (and have yet to be paid), it is
13       the opinion of staff, which has been subsequently affirmed by the Planning
         Commission, that no formal application exists at this time for tentative subdivision
14       map 8446.

15       "However, [in] a good faith effort anticipating that the fees would be forthcoming,
         staff has been continually working with Mr. Neff over the past three years to assist
16       him in getting the required information submitted in order to complete the
         application.  Staff has attempted to be prompt in their responses to submittal items
17       and inform Mr. Neff of the items still required.

18       ". . . .

19       "In order to alleviate this situation from occurring in the future, the Community
         Development Department has initiated a policy that no application forms are to be
20       accepted without the required processing fees."

21  After presentations by City staff and Neff, the City Council voted to deny the appeal.  Except as

22  expressly admitted, Respondent denies each and every allegation contained in paragraph 31.

23       32.    Answering paragraph 32, Respondent admits that following the City Council's denial

24  of Petitioners' appeal described in paragraph 31 above, Petitioners paid the required fees for his

25  eight-lot subdivision application and proceeded with two separate applications for the 1060

26  Minnesota Avenue property — one for an eight-lot subdivision and one for a minor subdivision

27  with four lots and one remainder lot.  (He had previously paid the fees for this four-lot subdivision

28  application.)   Except as expressly admitted, Respondent denies each and every allegation

13

1  contained in paragraph 32.

2          33.     Answering paragraph 33, Respondent admits that on March 6, 2007 the Planning

3  Commission considered Petitioners' application for an eight-lot tentative subdivision map for the

4  property at 1060 Minnesota Avenue.  Petitioners objected to many of the conditions of approval

5  recommended by City staff.  These objections were based on Petitioners' contention that some of

6  the proposed conditions were unconstitutional, were inapplicable because the application should

7  have been deemed complete earlier, or were simply unfair.  The Planning Commission voted to

8  approve Petitioners' application for an eight-lot tentative subdivision map for the property at 1060

9  Minnesota Avenue with the conditions proposed by City staff.  Except as expressly admitted,

10  Respondent denies each and every allegation contained in paragraph 33.

11          34.     Answering paragraph 34, Respondent admits that Petitioners' appealed to the City

12  Council the Planning Commission's March 6, 2007 approval of Petitioners' eight-lot tentative

13  subdivision map for the property at 1060 Minnesota Avenue.  The City Council held a hearing on

14  the appeal on April 7, 2007.  Petitioners submitted to the City Council both in writing and orally

15  their objections to the Planning Commission's approval.  The City Council voted to deny the

16  appeal.  Except as expressly admitted, Respondent denies each and every allegation contained in

17  paragraph 34.

18          35.     Answering paragraph 35, Respondent realleges its responses to paragraphs 1 through

19  34 above.

20          36.     Answering paragraph 36, Respondent admits that the Permit Streamlining Act (Cal.

21  Gov. Code § 65920 et seq.) sets forth time frames for the permitting of development projects.  The

22  provisions of the Permit Streamlining Act speak for themselves, and their interpretation and

23  correct application is a matter of dispute in this litigation.  Except as expressly admitted,

24  Respondent denies each and every allegation contained in paragraph 36.

25          37.     Answering paragraph 37, Respondent denies the allegations set forth in

26  paragraph 37.

27          38.     Answering paragraph 38, Respondent denies the allegations set forth in

28  paragraph 38.

39.     Answering paragraph 39, Respondent denies the allegations set forth in paragraph 39.

40.     Answering paragraph 40, Respondent denies the allegations set forth in paragraph 40.

41.     Answering paragraph 41, Respondent realleges its responses to paragraphs 1 through 40 above.

42.     Answering paragraph 42, Respondent denies the allegations set forth in paragraph 42.

43.     Answering paragraph 43, Respondent denies the allegations set forth in paragraph 42.

44.     Answering paragraph 44, Respondent denies the allegations set forth in paragraph 43.

45.     Answering paragraph 45, Respondent realleges its responses to paragraphs 1 through 44 above.

46.     Answering paragraph 46, Respondent denies the allegations set forth in paragraph 46.

47.     Answering paragraph 47, Respondent realleges its responses to paragraphs 1 through 46 above.

48.     Answering paragraph 48, Respondent denies the allegations set forth in paragraph 48.

49.     Answering paragraph 49, Respondent denies the allegations set forth in paragraph 49.

## AFFIRMATIVE DEFENSES

1.     As a first separate affirmative defense, Respondent alleges that the Petition fails to state a claim upon which relief can be granted.

2.     As a second separate affirmative defense, Respondent alleges that Petitioners' claim that their August 8, 2003 "Universal Application" was deemed complete under the Permit Streamlining Act is barred by Petitioners' failure to seek judicial relief within 90 days as required

by section 66499.37 of the California Government Code.

   3. As a third separate affirmative defense, Respondent alleges that Petitioners' claim that their August 8, 2003 "Universal Application" should be "deemed complete" under the Permit Streamlining Act is barred by the doctrine of waiver because Petitioners continued to work on this application and their other subdivision applications for the same property, requiring the City to expend significant time and resources on this and the other applications and did not pursue Petitioners' "deemed complete" claim for the August 8, 2003 "Universal Application" for over three years.

   4. As a fourth separate affirmative defense, Respondent alleges that Petitioners' claim that their August 8, 2003 "Universal Application" should be "deemed complete" under the Permit Streamlining Act is barred by the doctrine of estoppel because Petitioners continued to work on this application and their other subdivision applications for the same property, requiring the City to expend significant time and resources on this and the other applications and did not pursue Petitioners' "deemed complete" claim for the August 8, 2003 "Universal Application" for over three years.

   5. As a fifth separate affirmative defense, Respondent alleges that Petitioners' claim that their August 8, 2003 "Universal Application" should be "deemed complete" under the Permit Streamlining Act is barred by the doctrine of laches because Petitioners continued to work on this application and their other subdivision applications for the same property, requiring the City to expend significant time and resources on this and the other applications and did not pursue Petitioners' "deemed complete" claim for the August 8, 2003 "Universal Application" for over three years.

   6. As a sixth and separate affirmative defense, Respondent alleges that Petitioners' claims are barred in part or in full by the statute of limitations (California Government Code § 66499.37).

   7. As a seventh separate affirmative defense, Respondent alleges that Petitioners' claims regarding the processing of their applications for 13 and 12 lot subdivisions are moot because Petitioners abandoned those applications.

8. As a eighth separate affirmative defense, Respondent alleges that Petitioners' claims regarding alleged delays in the processing of their applications are barred by the doctrine of estoppel because Petitioners did not indicate in their initial submitals what kind of permit they were applying for and because they continually refused to pay the required fees.

9. As a ninth separate affirmative defense, Respondent alleges that Petitioners' claims regarding alleged delays in the processing of their applications are barred by the doctrine of waiver because Petitioners did not indicate in their initial submitals what kind of permit they were applying for and because they continually refused to pay the required fees.

## PRAYER

Respondent prays:

1. That the Petition be denied and all of its claims for relief be dismissed with prejudice;

2. That Respondent be awarded the costs of suit incurred herein;

3. That Respondent be awarded its reasonable attorney's fees; and

4. That Respondent be granted such other and further relief as this Court may deem just and proper.


Dated: June 26, 2007                    JARVIS, FAY & DOPORTO, LLP


                                        By: /s/ Benjamin P. Fay
                                            Benjamin P. Fay
                                        Attorneys for Respondent and Defendant
                                        CITY OF BRENTWOOD


J:\Clients\137 [City of Brentwood]\006 [Bailey Neff]\Plead\Answer.wpd